OPINION OF THE COURT
Arthur M. Schack, J.
*878 After settlement of the instant case by plaintiffs incoming attorneys, Michael A. Zimmerman & Associates, EC., plaintiffs outgoing attorneys, Rovegno and Taylor, EC., move for an order to determine the division of legal fees between the incoming and outgoing attorneys. Mr. Zimmerman disputes Rovegno and Taylor’s motion, claiming that the outgoing attorneys were discharged for cause and not entitled to any fee, or in the alternative, if discharged without cause, Rovegno and Taylor should have their fee determined on a quantum meruit basis. For the following reasons this court finds that the outgoing attorneys were dismissed without cause, and the outgoing attorneys, because of no prior fee agreement with the incoming attorney, are entitled to payment of legal fees from the settlement proceeds on a contingency basis.
Background
Plaintiff Peter Byrne sustained personal injuries in a June 22, 1992 motor vehicle accident. He retained the Rovegno and Taylor firm. On July 1, 1992, plaintiff executed a contingency retainer agreement to pay Rovegno and Taylor one third (33x/3%) of the net sum recovered, “whether recovered by suit, settlement or otherwise,” after deductions for expenses and disbursements by his attorneys (reply affirmation in support of motion, exhibit D). Rovegno and Taylor prosecuted the instant action on behalf of plaintiff, including the exchange of discovery, the taking of depositions, and conducting settlement discussions with adjusters for defendants’ insurance carrier.
In November 2000 the insurance carrier offered $115,000 to settle the action. At about the same time plaintiff decided to replace Rovegno and Taylor with Mr. Zimmerman. As a follow up to conversations with plaintiff, Robert Rovegno, Esq., conveyed a settlement offer of $115,000 to plaintiff in a November 15, 2000 letter (reply affirmation in support of motion, exhibit F). Plaintiff and Mr. Zimmerman executed a consent form to change plaintiffs attorney to Mr. Zimmerman on the prior day (affirmation in opposition, exhibit A). In a November 16, 2000 letter by Mr. Zimmerman to Mr. Rovegno, Mr. Zimmerman admitted that Mr. Rovegno had negotiated the $115,000 settlement offer from the insurance carrier (affirmation in opposition, exhibit B).
Subsequently, Rovegno and Taylor executed the consent to change attorneys and the file was turned over to Mr. Zimmerman in February 2001 (affirmation in opposition para 13). The *879 papers submitted in opposition to the instant motion display no evidence in admissible form to substantiate that Rovegno and Taylor were terminated for cause.
In a letter dated February 26, 2004, Mr. Zimmerman informed Rovegno and Taylor that the matter had been settled. The letter stated that “if you intend to claim any fees you must contact my office within 10 days or your claim will be forfeited” (reply affirmation in support of motion, exhibit E).
Mr. Rovegno made the instant motion on April 28, 2004. Several appearances for motion practice then ensued and the case was marked final for oral argument on August 10, 2004. Mr. Zimmerman defaulted in appearing for oral argument on that date.
Discussion
New York State has provided for an attorney’s lien by statute since 1879. From 1909, with various amendments, it has been recodified in Judiciary Law § 475. It states:
“From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client’s favor, and the proceeds thereof in whatever hands they may come-, and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.” (Judiciary Law § 475 [emphasis added].)
The Court of Appeals, in Goodrich v McDonald (112 NY 157, 163 [1889]), observed in reviewing the history of an attorney’s lien that:
“It is a peculiar lien, to be enforced by peculiar methods. It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.”
“Knavery” is defined as “a roguish or mischievous act.” (Web *880 ster’s New Collegiate Dictionary 632 [8th ed. 1981].) This court must be vigilant in protecting attorneys from “knavery” or any other form of mischief by clients or other attorneys.
Matter of City of New York (United States of Am. — Coblentz) (5 NY2d 300, 307 [1959], cert denied 363 US 841 [I960]) is a case in which the Court of Appeals held:
“Section 475, in substance, declares the common law. The origin of an attorney’s lien, whether as retaining or as charging, is obscure, but in all events, irrespective of type, has been recognized and enforced by the courts from very early times (see Fourth Annual Report of N. Y. Judicial Council, 1938, p. 49; 7 C. J. S., Attorney and Client, § 210 et seq.; 5 Am. Jur., Attorneys at Law, § 208 et seq.).”
It is well articulated that an attorney’s lien arises with the commencement of an action. (See Judiciary Law § 475; LMWT Realty Corp. v Davis Agency, 85 NY2d 462, 466-467 [1995].) In the instant case, with the settlement resulting in proceeds received by the incoming attorney, Mr. Zimmerman, there is an attorney’s lien on the settlement by the outgoing firm, Rovegno and Taylor. (Banque Indosuez v Sopwith Holdings Corp., 98 NY2d 34, 44 [2002].)
New York law is clear that a client may discharge the services of an attorney with or without cause. (Matter of Montgomery, 272 NY 323, 326 [1936]; Reubenbaum v B. & H. Express, 6 AD2d 47, 48 [1st Dept 1958].) Reubenbaum instructed (at 48) that:
“When this happens, the attorney is entitled to compensation, determined by quantum meruit, whether that be more or less than that provided in the contract or retainer between the attorney and client (Matter of Montgomery, 272 N. Y. 323; Matter of Tillman, 259 N. Y. 133; Matter of Krooks, 257 N. Y. 329).”
When the fee dispute is between outgoing and incoming attorneys, as in the instant case, the rules change. Reubenbaum held (at 49) that:
“If the dispute is primarily or exclusively between the attorneys, the outgoing attorney is given the right to elect whether he will take his compensation on the basis of a presently fixed dollar amount quantum meruit, or whether, still on the basis of quantum meruit, he will take a contingent percentage instead.”
The Court of Appeals discussed this issue in Lai Ling Cheng v *881 Modansky (73 NY2d 454 [1989]), in which the outgoing attorney commenced a conservatorship proceeding and performed preliminary work before instituting a tort action. The conservators agreed to pay the outgoing attorney one third of the recovery. Subsequently, prior to the filing of the tort action, the outgoing attorney was discharged without cause and an incoming firm was retained with an agreement to pay them one third of the recovery. The incoming and outgoing attorneys, at the time of the attorney substitution, could not agree on the fee to be paid to the outgoing attorney. The incoming firm sent a letter to the outgoing attorney, by which the firm requested the file and acknowledged that the outgoing attorney had “a lien for prior legal services rendered . . . the amount of which shall be subsequently determined at the conclusion of the litigation.” 0Cheng at 457 [internal quotation marks omitted].) The letter (at 457) “provided that if the attorneys were unable to agree on the value of [the outgoing attorney’s] services at the conclusion of the action, the matter was to be submitted to a court for determination.” Cheng (at 458), citing Reubenbaum and subsequent appellate cases, upheld the right of an outgoing attorney to:
“elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case (Matter of Cordes v Purcell, Fritz & Ingrao, 89 AD2d 870; Paulsen v Halpin, 74 AD2d 990, 991; Reubenbaum v B. & H. Express, supra, at 49).”
Cheng further observed (at 458) that the contingency percentage could be set at the time of substitution but “is better determined at the conclusion of the case.” Reubenbaum held (at 49) that “[t]hen all of the factors properly determining compensation, especially the size of the recovery, have been ascertained.”
In the instant case no evidence was presented that any agreement has ever been reached between Mr. Zimmerman and Rovegno and Taylor as to Rovegno and Taylor’s fee. Mr. Zimmerman’s February 24, 2004 letter to Rovegno and Taylor (reply affirmation, exhibit E) clearly demonstrated that there was no fee arrangement between the attorneys. When there is no fee agreement between outgoing and incoming attorneys, it is presumed that the outgoing attorney elected to receive a *882 contingency fee. The Court of Appeals in Matter of Cohen v Grainger, Tesoriero & Bell (81 NY2d 655, 659 [1993]) held that:
“This presumption, that a contingent fee is desired if no election is made, follows logically. As a practical matter, quantum meruit valuation of services rendered by a discharged attorney can best be determined at the time of discharge, rather than some months or years later when the case finally ends, whereas the calculation of a contingent percentage fee is better left to the conclusion of the litigation ‘when the amount of the recovery and the relative contributions of the lawyers to it can be ascertained’ (Cheng, supra, at 459).”
The presumption would also avoid the imposition of a quantum meruit fee if the litigation was unsuccessful. Further (at 659-660), the Court held that:
“we leave the determination of fees in these cases to the election of the departing attorney, as demonstrated by his or her conduct. Where an election is not made or sought at the time of discharge, the presumption should be that a contingent fee has been chosen. This result avoids both the problem of belated claims for compensation when proof of services rendered is hard to rebut and the inequity involved in allowing the discharged attorney to wait until the case is lost and then demand a fee measured quantum meruit. Our holding places the discharged attorney in the position of having to demand payment of a fixed sum at the time of discharge, or if he or she remains silent, of collecting payment only if the litigation proves successful and then on a contingency basis.”
The Appellate Division in both the First and Second Departments has consistently followed the Court of Appeals, holding that a firm’s failure upon discharge without cause to elect a fixed fee creates a presumption that a contingency fee was elected. (See Budin Reisman & Schwartz v Giamboi, Reiss & Squitieri, 224 AD2d 325 [1st Dept 1996]; Wasserman, Schneider & Babb v EM Indus., 245 AD2d 1 [1st Dept 1997]; Fernandez v New York City Health & Hosps. Corp., 238 AD2d 544, 545 [2d Dept 1997]; Connelly v Motor Veh. Acc. Indem. Corp., 292 AD2d 332, 333 [2d Dept 2002]; Smerda v City of New York, 7 AD3d 511 [2d Dept 2004].)
In the instant case, the outgoing firm, Rovegno and Taylor, secured a settlement offer of $115,000. The matter was *883 ultimately settled by the incoming attorney, Mr. Zimmerman, for $200,000 (reply affirmation in support of motion para 7). Applying the principles of the above-cited cases to the instant case, as well as their retainer agreement, the Rovegno and Taylor firm is entitled to a fee from the settlement proceeds of their fees and disbursements, and one third of the net recovery based upon the $115,000 settlement offer. Rovegno and Taylor filed a computation and accounting schedule (reply affirmation in support of motion, exhibit H) detailing fees and disbursements of $1,993.43 for medical and hospital records, police reports, defendant’s Department of Motor Vehicles 104 report, examination before trial transcripts, court fees, and process service. Rovegno and Taylor are entitled to a total sum of $39,662.29 for legal fees, together with costs and disbursements. Deducting $1,993.43 from the gross recovery of $115,000 gives a net recovery of $113,006.57. The outgoing attorneys’ fee as per Rovegno and Taylor’s retainer agreement is one third of the $113,006.57 net recovery, which is $37,668.86. Adding fees and disbursements of $1,993.43 to the net recovery of $37,668.86 gives Rovegno and Taylor the $39,662.29 which they are entitled to from the settlement proceeds.
Conclusion
The motion of plaintiff’s outgoing law firm, Rovegno and Taylor, EC., for legal fees of $37,668.86 plus costs and disbursements of $1,993.43, for a total sum of $39,662.29 from the settlement proceeds secured by plaintiff’s incoming attorneys, Michael Zimmerman & Associates, P.C., is granted.
Michael Zimmerman & Associates, P.C. and/or plaintiff Feter Byrne will pay $39,662.29 from the settlement proceeds of the instant action to Rovegno and Taylor, P.C. within 10 days of the date of entry of this decision and order.